# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| IN RE: | CASE NO. 19-01178 (EAG) |
|---|---|
| WILMER TACORONTE ORTIZ | CHAPTER 11 |
| Debtor | |
| IN RE: | CASE NO. 19-01179 (EAG) |
| REMLIW, INC. | CHAPTER 11 |
| Debtor | |
| IN RE: | CASE NO. 19- 03828 (EAG) |
| MONTE IDILIO INC. | CHAPTER 11 |
| Debtor | |
| IN RE: | CASE NO. 19-03799 (EAG) |
| HOTEL CUPIDO INC. | CHAPTER 11 |
| Debtor | |

## STIPULATION FOR OSP CONSORTIUM LLC'S CLAIM

TO THE HONORABLE COURT:

COME NOW the captioned Debtors (the "Debtors") and secured creditor OSP Consortium LLC ("OSP") (collectively, the "Parties"), through their undersigned counsels, and respectfully state and pray:

### Background

1. On January 22, 2003, Westernbank de Puerto Rico ("Westernbank"), Wilmer Tacoronte Ortiz ("Tacoronte" or the "Debtor") and Sonia Enid Vélez Vázquez ("Vélez"), executed a *Loan Installment Agreement to Individuals* ("Contrato de Préstamo a Plazos a Individuos"), authenticated through affidavit number 12,913 before Notary Public Francisco J. Biaggi Landrón, whereby a loan was granted to the Tacoronte and Vélez in the amount of $70,000.00 ("Loan I", Case No. 19-01178, Proof of Claim No. 5-1, part 4, pages 14-17), evidenced by a note of such amount, authenticated through affidavit number 12,910 executed also on that same date before

the aforementioned Notary Public (the "Note I", Case No. 19-01178 Proof of Claim No. 5-1, part 6, pages 31-33).

2. Loan I is guaranteed by the following Mortgage Note:

   a. Note in the amount of $70,000.00, authenticated through affidavit number 12,911 executed on January 22, 2003 before Notary Public Francisco J. Biaggi Landrón (the "Mortgage Note A", Case No. 19-01178 Proof of Claim No. 5-1, part 6, pages 34- 36), secured through Mortgage Deed No. 46, executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed A", Case No. 19-01178, Proof of Claim No. 5-1, part 5, pages 26-42).

3. Also on January 22, 2003, Westernbank, Tacoronte and Vélez executed a *Security Agreement* ("Acuerdo de Gravamen Mobiliario"), authenticated through affidavit number 12,912, before Notary Public Francisco J. Biaggi Landrón, as to Loan I, whereby the Debtor pledged Mortgage Note A in favor of Westernbank. See Case No. 19-01178, Proof of Claim No. 5-1, part 7, pages 1-4.

4. On July 28, 2006, Westernbank, Tacoronte and Vélez executed a *Loan Installment Agreement to Individuals* ("*Contrato de Préstamo a Plazos a Individuos*"), authenticated through affidavit number 8,919 before Notary Public Gary E. Biaggi Silva, whereby Westernbank extended the following loans (i) loan for $150,000.00 ("Loan II"), evidenced by a note of such amount, authenticated through affidavit number 8,915 executed also on that same date before the aforementioned Notary Public (the "Note II", Case No. 19-01178, Proof of Claim No. 5-1, part 6, pages 45-48), and (ii) loan for $150,000.00 ("Loan III") evidenced by a note of such amount, authenticated through affidavit number 8,916 executed also on that same date before the aforementioned Notary Public (the "Note III", Case No. 19-01178, Proof of Claim No. 5-1, part 6, pages 49-52). See Loans II and III, Case No. 19-01178 Proof of Claim No. 5-1, part 4, pages 18-24.

5. Loans II and III are guaranteed by the following mortgage notes:

   a. Note in the amount of $13,000.00, executed on July 28, 2006 by Tacoronte, authenticated through affidavit number 8,917 before Notary Public Gary E. Biaggi Silva (the "Mortgage Note B", Case No. 19-01178 Proof of Claim No. 5-1, part 6, pages 1-3), secured through Deed No. 415 executed also on that same date before

the aforementioned Notary Public (the "Mortgage Deed B", Case No. 19-01178 Proof of Claim No. 5-1, part 5, pages 76-91).

b. Note in the amount of $217,000.00 executed on March 23, 1999 by Ana Elvira Negrón Candelario ("Negrón"), authenticated through affidavit number 20,121, before Notary Public José L. Landrón Ramery ("Mortgage Note C", Case No. 19-01178 Proof of Claim No. 5-1, part 6, pages 53-55), secured through Deed No. 27 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed C", Case No. 19-01178, Proof of Claim No. 5-1, part 5, pages 1-17).

c. Note in the amount of $137,000.00, executed on March 23, 1999 by Tacoronte, authenticated through affidavit number 20,122 before Notary Public José L. Landrón Ramery (the "Mortgage Note D", Case No. 19-01178, Proof of Claim No. 5-1, part 6, page 42-44), secured through Deed No. 28 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed D", Case No. 19-01178, Proof of Claim No. 5-1, part 5, pages 47-63).

6. Notes II and III also provide the creation of a lien in favor of Westernbank over Tacoronte and Vélez' instruments, goods, values and effects that were thereby delivered to Westernbank and/or right holder of the obligations, as well as on the product of all of them, which are described in the *Continuous Guarantee and Security Agreement Regarding Note(s) Deposited with Third Party(ies)* ("*Acuerdo de Gravamen Mobiliario y Garantía Contínua Sobre Pagaré(s) Depositado(s) con Tercero(s)*") (the "*Security Agreement I*", Case No. 19-01178 Proof of Claim 5-1, part 7, pages 5-9). The Security Agreement I is authenticated through affidavit number 8,918 before Notary Public Gary E. Biaggi Silva, and provides, *inter alia*, that: (i) Negrón pledged as security for Loans II and III a real property located in Hormigueros, PR, which is recorded at page 236 of volume 81 of Hormigueros, property number 2,544; and (ii) Mortgage Notes B, C and D, were pledged as security in favor of Westernbank, which were in possession of Banco Santander Puerto Rico.

7. On June 12, 2008, Westernbank, Tacoronte and Vélez executed a *Commercial Line of Credit* ("*Línea de Crédito Comercial*"), authenticated through affidavit number 11,438 before Notary Public Gary E. Biaggi Silva, whereby a line of credit was granted to Tacoronte and Vélez in the maximum amount of $75,000.00 (the "Credit Line I", Case No. 19-01178, Proof of

-3-

Claim No. 5-1, part 4, pages 1-6), evidenced by a note of such amount, authenticated through affidavit number 11,435 executed also on that same date before the aforementioned Notary Public (the "Note IV", Case No. 19-01178 Proof of Claim No. 5-1, part 6, pages 37-41).

8. Credit Line I is evidenced by the following Mortgage Notes:

   a. Mortgage Note A (Case No. 19-01178, Proof of Claim No. 5-1, part 6, pages 34-36), secured through Mortgage Deed A (Case No. 19-01178 Proof of Claim No. 5-1, part 5, pages 26-42).

   b. Mortgage Note B (Case No. 19-01178, Proof of Claim No. 5-1, part 6, pages 1-3), secured through Mortgage Deed B (Case No. 19-01178, Proof of Claim No. 5-1, part 5, pages 76-91).

   c. Mortgage Note C (Case No. 19-01178, Proof of Claim No. 5-1, part 6, pages 53-55), secured through Mortgage Deed C (Case No. 19-01178, Proof of Claim No. 5-1, part 5, pages 1-17).

   d. Mortgage Note D (Case No. 19-01178, Proof of Claim No. 5-1, part 6, page 42-44), secured through Mortgage Deed D (Case No. 19-01178, Proof of Claim No. 5-1, part 5, pages 47-63).

   e. Note in the amount of $25,000.00, executed on April 25, 1983 by Tacoronte and Negrón, authenticated through affidavit number 21,513 before Notary Public Jovino Martínez Ramírez (the "Mortgage Note E", Case No. 19-01179, Proof of Claim No. 1-1, part 7, pages 1-3), secured through Deed No. 95 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed E").

   f. Note in the amount of $25,000.00, executed on July 29, 1983 by Tacoronte and Negrón, authenticated through affidavit number 403 before Notary Public Miguel E. Bonilla Sierra (the "Mortgage Note F", Case No. 19-01179 Proof of Claim No. 1-1, part 7, pages 4-6), secured through Deed No. 62 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed F", Case No. 19-01179, Proof of Claim No. 1-1, part 5, pages 1-12).

   g. Note in the amount of $25,000.00, executed on December 19, 1984, by Tacoronte, authenticated through affidavit number 12,921 before Notary Public Frank M. Ramírez Ramírez (the "Mortgage Note G", Case No. 19-01179 Proof of Claim No. 1-1, part 7, pages 7-9), secured through Deed No. 121 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed G", Case No. 19-01179, Proof of Claim No. 1-1, part 5, pages 13-18).

   h. Note in the amount of $50,000.00, executed on May 15, 1987, by Tacoronte, authenticated through affidavit number 14,239 before Notary Public Frank M. Ramírez Ramírez (the "Mortgage Note H", Case No. 19-01179 Proof of Claim No. 1-1, part 7, pages 10-12), secured through Deed No. 51 executed on that same date before the aforementioned Notary Public (the "Mortgage Deed H", Case No. 19-01179, Proof of Claim No. 1-1, part 5, pages 19-24)

i. Note in the amount of $30,000.00, executed on September 30, 1991 by Tacoronte, authenticated through affidavit number 407 before Notary Public Francisco José Casalduc (the "Mortgage Note I", Case No. 19-01179, Proof of Claim No. 1, part 7, pages 13-15), secured through Deed No. 19, executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed I", Case No. 19-01179 Proof of Claim No. 1-1, part 5, pages 25-38).

j. Note in the amount of $130,000.00, executed on July 2, 1998 by Tacoronte and Vélez, authenticated through affidavit number 4,627 before Notary Public Francisco M. Biaggi Landrón (the "Mortgage Note J", Case No. 19-01179, Proof of Claim No. 1-1, part 7, pages 16-18), secured through Deed No. 604 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed J", Case No. 19-01179 Proof of Claim No. 1-1, part 5, pages 39-56).

k. Note in the amount of $515,000.00 executed on March 28, 2003 by Tacoronte and Vélez, authenticated through affidavit number 9,841 before Notary Public José M. Biaggi Landrón (the "Mortgage Note K", Case No. 19-01179, Proof of Claim No. 1-1, part 7, pages 25-27), secured through Deed No. 106 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed K", Case No. 19-01179 Proof of Claim No. 1-1, part 6, pages 43-59).

l. Note in the amount of $15,000.00, executed on February 15, 1985 before Notary Public Pablo Cabrera Rivera (the "Mortgage Note L", Case No. 19-01178, Proof of Claim No. 5-1, part 4, page 2), secured through Deed No. 14 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed L", Case No. 19-01178, Proof of Claim No. 5-1, part 4, page 2).

m. Note in the amount of $125,000.00, executed on March 2, 1987 before Notary Public Pablo Cabrera Rivera (the "Mortgage Note M", Case No. 19-01178 Proof of Claim No. 5-1, part 4, page 2), secured through Deed No. 27 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed M", Case No. 19-01178, Proof of Claim No. 5-1, part 4, page 2).

n. Note in the amount of $35,000.00, executed on June 5, 1992, before Notary Public Francisco J. Arraiza Donate (the "Mortgage Note N", Case No. 19-01178, Proof of Claim No. 5-1, part 4, page 3), secured through Deed No. 89 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed N", Case No. 19-01178, Proof of Claim No. 5-1, part 4, page 3).

o. Note in the amount of $300,000.00, executed on December 28, 2001 by Monte Idilio, Inc. ("Monte Idilio") through Luis Toledo Monroig ("Toledo"), authenticated through affidavit number 3,544 before Notary Public Eliezer Rivera Lugo (the "Mortgage Note O", Case No. 19-01179, Proof of Claim No. 1, part 7, pages 19-21), secured through Deed No. 128 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed O", Case No. 19-01179, Proof of Claim No. 1-1, part 5, pages 57-72).

p. Note in the amount of $1,615,000.00, executed on March 28, 2003 by Monte Idilio, through Tacoronte, authenticated through affidavit number 9,840 before Notary

Public José M. Biaggi Landrón (the "Mortgage Note P"; Case No. 19-01179, Proof of Claim No. 1-1, part 7, pages 22-24), secured through Deed No. 105, executed also on that same date before the aforementioned Notary Public (Proof of Claim No. 1-1, part 6, pages 26-42).

q. Note in the amount of $25,000.00, executed on March 2, 1987 before Notary Public Pablo Cabrera Rivera (the "Mortgage Note Q", Case No. 19-01178 Proof of Claim No. 5-1, part 4, page 3), secured through Deed No. 26 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed Q", Case No. 19-01178 Proof of Claim No. 5-1, part 4, page 3).

r. Note in the amount of $65,000.00, executed on October 18, 1999 before Notary Public Francisco José Casalduc (the "Mortgage Note R", Case No. 19-01178 Proof of Claim No. 5-1, part 4, page 3), secured through Deed No. 131 executed also on that same date before the aforementioned Notary Public (the "Mortgage Deed R", Case No. 19-01178 Proof of Claim No. 5-1, part 4, page 3).

9. Note IV also provides the creation of a lien in favor of Westernbank over Tacoronte and Vélez' instruments, goods, values and effects that are hereby delivered to Westernbank and/or holder of this obligation, as well as on the product of all of them, which are described in the *Continuous Guarantee and Security Agreement* ("*Acuerdo de Gravamen Mobiliario y Garantía Contínua*") ("*Security Agreement II*"). The Security Agreement II is authenticated through affidavit number 11,436 before Notary Public Gary E. Biaggi Silva, which provides, *inter alia*, that (i) Negrón gave as security for Loans II and III a real property located in Hormigueros, PR, recorded at page 236 of volume 81 of Hormigueros, property number 2,544; (ii) Westernbank became the holder of Mortgage Notes A through R. See Security Agreement II, Case No. 19-01178, Proof of Claim No. 5-1, part 7, pages 10-15.

10. Also on June 12, 2008, Monte Idilio executed a *Continuous and Unlimited Guaranty* ("*Garantía Ilimitada y Contínua*") as guarantor to the obligations under Credit Line I, authenticated through affidavit number 11,437 before Notary Public Gary E. Biaggi Silva (Case No. 19-01178, Proof of Claim No. 5-1, part 8, pages 1-2).

11. On July 24, 2008, Westernbank and Will & Son, Inc. ("Will & Son"), through Tacoronte, executed a *Commercial Line of Credit to Corporation* ("*Línea de Crédito Comercial a Corporaciones*"), authenticated through affidavit number 17,769 before Notary Public Adrián J.

Hilera Torres, whereby a line of credit was extended to Will & Son in the maximum amount of $150,000.00 ("Credit Line II") (Loans I, II, and III and Credit Lines I and II, as amended or further restructured, are hereinafter referred to as the "Loan"), which is secured by, *inter alia*, the following:

    a. Mortgage Notes A through R described above.

    b. *Letter of Unlimited and Continuous Guarantee* ("Carta de Garantía Ilimitada y Contínua") executed by Tacoronte and Vélez on July 24, 2008, authenticated through affidavit number 17,770, before Notary Public Adrián J. Hilera Torres (Case No. 19-01178, Proof of Claim No. 5-1, part 9, pages 33-34).

    c. *Letter of Unlimited and Continuous Guarantee* ("Carta de Garantía Ilimitada y Contínua") executed by Monte Idilio through Tacoronte on July 24, 2008, authenticated through affidavit number 17,771, before Notary Public Adrián J. Hilera Torres (Case No. 19-01178, Proof of Claim No. 5-1, part 9, pages 29-30).

    d. *Letter of Unlimited and Continuous Guarantee* ("Carta de Garantía Ilimitada y Contínua") executed by Hotel Cupido, Inc. ("Hotel Cupido"), through Tacoronte on July 24, 2008, authenticated through affidavit number 17,772, before Notary Public Adrián J. Hilera Torres (Case No. 19-01178, Proof of Claim No. 5-1, part 9, pages 25-26).

    e. *Letter of Unlimited and Continuous Guarantee* ("Carta de Garantía Ilimitada y Contínua") executed by Remliw, Inc. ("Remliw"), through Tacoronte on July 24, 2008, authenticated through affidavit number 17,773, before Notary Public Adrián J. Hilera Torres (Case No. 19-01178, Proof of Claim No. 5-1, part 9, pages 31-32).

    f. *Letter of Unlimited and Continuous Guarantee* ("Carta de Garantía Ilimitada y Contínua") executed by Manualidades Sonia, Inc. ("Manualidades Sonia"), through Tacoronte on July 24, 2008, authenticated through affidavit number 17,774, before Notary Public Adrián J. Hilera Torres (Case No. 19-01178, Proof of Claim No. 5-1, part 9, pages 27-28).

See Case No. 19-01178 Proof of Claim No. 5-1, part 9, pages 1-8.

    12. Also on July 24, 2008, Westernbank, Will & Son, Monte Idilio, Negrón, Tacoronte and Vélez, executed a *Continuous Guarantee and Security Agreement* ("Acuerdo de Gravamen Mobiliario y Garantía Contínua"), authenticated through affidavit number 17,768 before Notary Public Adrián J. Hilera Torres, whereby Mortgage Notes A through R were pledged as security for Westernbank. See Case No. 19-01178 Proof of Claim No. 5-1, part 9, pages 19-24.

13. On December 7, 2009, Westernbank, Will & Son, Monte Idilio through Tacoronte, Tacoronte and Vélez, executed a *Conversion of Line of Credit to Installment Loan* ("Conversión de Línea de Crédito a Préstamo a Plazos"), authenticated through affidavit number 19,449 before Notary Public José A. Amador López (the "Conversion of Credit Line to Installment Note II", Case No. 19-01178 Proof of Claim No. 5-1, part 9, pages 9-13), whereby Will & Son's (i) requested a payment plan to Westernbank of the balance due under the Credit Line II; and (ii) recognized the debt owed under the Credit Line II was $80,000.00, evidenced by a note of such amount authenticated through affidavit number 19,450 before Notary Public José A. Amador López (the "Note V", Case No. 19-01178 Proof of Claim No. 5-1, part 9, pages 14-18).

14. On December 8, 2009, Westernbank, Tacoronte and Vélez executed a *Conversion of Line of Credit to Installment Loan* ("Conversión de Línea de Crédito a Préstamo a Plazos"), authenticated through affidavit number 19,452 before Notary Public José A. Amador López (the "Conversion of Credit Line to Installment Note I", Case No. 19-01178, Proof of Claim No. 5-1, part 4, pages 7-13), whereby Tacoronte and Vélez (i) requested a plan payment to Westernbank of the balance due pursuant to the Credit Line I; and (ii) recognized the debt owed under the Credit Line I was $55,000.00, evidenced by a note of such amount authenticated through affidavit number 19,453 before Notary Public José A. Amador López (the "Note VI", Case No. 19-01178, Proof of Claim No. 5-1, part 6, pages 17-21).

15. Also on December 8, 2009, Monte Idilio executed a *Continuous and Unlimited Guaranty* ("*Garantía Ilimitada y Contínua*"), authenticated through affidavit number 19,454 before Notary Public José A. Amador López, as guarantor of the obligations under the Conversion of Credit Line to Installment Note I (Case No. 19-01178, Proof of Claim No. 5-1, part 8, pp. 3-4).

16. As part of the collateral securing Loans I, II and III, the following real estate properties have been mortgaged in favor of Westernbank, now OSP (the "Properties"):

   a. RUSTICA: Parcela radicada en el Barrio Sabana Hoyos del término municipal de Arecibo, con una cabida superficial de DOS PUNTO SETECIENTOS SESENTA Y UNO (2.771) CUERDAS, equivalentes a

DIEZ MIL NOVECIENTOS ONCE PUNTO ONCE (10,911.11) METROS CUADRADOS. En lindes por el NORTE, en ciento cincuenta y seis punto sesenta y siete (156.77) metros con la finca principal de la cual se segrega propiedad de los esposos Toledo-Monroig; por el SUR, en dos alineaciones continuas una de sesenta y tres punto cero uno (63.01) metros y otra de noventa y uno punto sesenta y ocho (91.68) metros con terrenos de la Autoridad de Tierras; por el ESTE, en setenta y ocho punto cero cero (78.00) metros con terrenos de Néstor Martínez; y por el OESTE, en setenta punto cero cero (70.00) metros con la Carretera estatal número seiscientos treinta y nueve (639).

Finca número veinte mil seiscientos veintiuno (20,621), inscrita al folio doscientos ocho (208) del tomo cuatrocientos noventa y tres (493) de Arecibo, Sección de Arecibo l ("Property A").

The owner of Property A is Monte Idilio. <u>See</u> Case No. 19-01179, Proof of Claim No. 2, Part 12, pp. 6-7.

b. RUSTICA: Radicada en el Barrio Sabana Hoyos, sitio denominado Manantial del término municipal de Arecibo, Puerto Rico, compuesta de SEIS MIL OCHOCIENTOS CUARENTA Y UNO PUNTO DOS MIL DOSCIENTOS NOVENTA Y CUATRO (6,841.2294) METROS CUADRADOS. En lindes por el NORTE, con terrenos de Alfredo Toledo; por el SUR, con terrenos de Monte Idilio, Inc.; por el ESTE, con terrenos de Néstor Martínez; por el OESTE, con la carretera estatal número seiscientos treinta y nueve (639).

Finca número cinco mil ciento dieciocho (5,118) inscrita al folio ciento noventa y cinco (195) del tomo trescientos cincuenta y tres (353) de Arecibo, Registro de la Propiedad de Puerto Rico, Sección de Arecibo I, 13ra inscripción ("Property B").

Property B is described above and it's recorded at page 195 of volume 353 of Arecibo, Property Registry of Arecibo I.

The owner of Property B is Monte Idilio. <u>See</u> Case No. 19-01179, Proof of Claim No. 2, Part 12, pp. 1-2.

c. RUSTICA: Radicada en el Barrio Ceiba Alta de Aguadilla, compuesta de CINCO (5) CUERDAS, o sea, una (1) hectáreas, noventa y seis (96) áreas, y cincuenta y una (51) centiáreas. En lindes por el NORTE, con Antonio Mounier y Nicolás Acuerdo Morales; por el SUR, con camino municipal; por el ESTE, con Sucesión Donato Cortés Pérez y Andrés Fuentes y por el OESTE, con Enrique Nieves Mounier.

Contiene una casa y una cabaña y un edificio de concreto de una planta que mide veintiseis (26) pies de frente por treinta y seis (36) pies de fondo por nueve (9) pies de luz, con piso de concreto, en un solo salón.

Finca número diez mil ochocientos sesenta y dos (10,862) inscrita al folio ciento treinta y tres (133) del tomo doscientos sesenta y uno (261) de Aguadilla, inscripción primera (1ra.) ("Property C").

Property C is recorded at page 133 of volume 261 of Aguadilla, Property Registry of Aguadilla.

Tacoronte is the owner of Property C. See Case No. 19-01178, Docket No. 42, page 17, item 1.2; Case No. 19-01179, Proof of Claim No. 1, part 11, pages 3-5.

d. RUSTICA: Predio de terreno de forma irregular compuesto de cero punto nueve mil setecientos veintinueve diezmilésimas (0.9729) de cuerda, equivalentes a tres mil ochocientos veintitrés punto setenta y siete (3,823.77) METROS CUADRADOS, radicado en el Barrio Hormigueros del término municipal de Hormigueros. Colindando por el NORTE, con terrenos de María González Cabrera y en parte con la Carretera Municipal; por el SUR, en parte con la Carretera Municipal y con terrenos de Ramón Cintrón; por el ESTE, con terrenos de Bonifacio Santiago; y por el OESTE, con la Carretera Municipal.

Contiene una casa de hormigón y bloques de hormigón que mide setenta pies con siete pulgadas (70'7") de frente por cincuenta y seis pies con cinco pulgadas (56'5") de ancho, consta de cuatro (4) cuartos dormitorios, sala, comedor, cocina, tres (3) baños completos y dos (2) medio baño, salón familiar, biblioteca, laundry, balcón y área para el estacionamiento de vehículos.

Finca número Dos Mil Quinientos Cuarenta y Cuatro (2,544) inscrita al folio doscientos treinta (230) del tomo ochenta y uno (81) de Hormigueros ("Property D").

Property D is recorded at page 230 of volume 81 of Hormigueros, Property Registry of Mayaguez.

The owner of Property D is Negrón. See Case No. 19-01178, Proof of Claim No. 5-1, part 9, pages 1-2.

e. RUSTICA: Parcela de terreno radicada en el Barrio Duey Bajo del municipio de San Germán, con una cabida superficial de NUEVE MIL TRESCIENTOS SESENTA Y SIETE PUNTO CINCO (9,367.5) METROS CUADRADOS. Colinda por el NORTE, en varias alineaciones que suman ciento sesenta y dos punto cuarenta y cinco (162.45) metros, con camino vecinal; por el SUR, en tres ( 3) alineaciones que suman ciento dieciocho punto cuarenta (118.40) metros, con César Martínez y Eduardo López; por el ESTE, en tres (3) alineaciones que suma ochenta y cinco punto veinte (85.20) metros, con la Carretera municipal a Duey Bajo y por el OESTE,

en setenta punto veinte (70.20) metros, con Sucesión José Dolores Sample.

Finca número ocho mil trescientos treinta y cuatro (8,334), inscrita al folio sesenta y cuatro (64) del tomo doscientos setenta y nueve (279), del Registro de la Propiedad de San Germán ("Property E").

Property E is recorded at page 64 of volume 279 of San Germán, Property Registry of San Germán.

The owner of Property E is Tacoronte. See Case No. 19-01178, Docket No. 42, page 17, item 1.2; Case No. 19-01179.

f.  RUSTICA: Predio de terreno radicado con el #11-A sito en el barrio Hoconuco del término municipal de San Germán. Con una cabida superficial de 1,261.26 metros cuadrados. Colinda al NORTE, en 50.11 metros, con terrenos de Manuel Valentín Padilla, solar # 11 del plano; al SUR, en 3.79 metros y 42.43 metros, con la calle asfaltada; al ESTE, en 25.00 metros, con Alfredo Ortíz y al OESTE, en un ángulo de 5.20 metros, con antiguo remanente de la finca principal, ahora calle asfaltada.

Finca número dieciseis mil trescientos noventa y cinco (16,395), inscrita al folio doscientos veintiseis (226) del tomo quinientos ocho (508) de San Germán ("Property F").

Property F is recorded at page 226 of volume 508, Property Registry of San Germán.

The owners of Property F are Tacoronte and Velez. See Case No. 19-01178, Proof of Claim No. 5-1, part 10, page 5.

17. On April 8, 2015, notified on April 13, 2015, the PR Court of First Instance, Superior Section of Mayaguez (the "State Court") entered *Summary Judgment* in the case of Banco Popular de Puerto Rico ("BPPR"), successor in interest of Westernbank, against (i) Remliw, (ii) Tacoronte, (iii) Vélez, (iv) Hotel Cupido, (v) Will & Son, (vi) Manualidades Sonia and (vii) Negrón (collectively, the "State Court Defendants"), Case No. ISCI2014-00583 (the "State Court Case") due to the State Court Defendants' default with the foregoing Loan.

18. OSP is the successor in interest of Westernbank, BPPR, and Condado 2, LLC ("Condado").

19. On March 2, 2019, Tacoronte filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. See Case No. 19-01178, Docket No. 1.

20. On April 3, 2019, Condado 2 filed Proof of Claim No. 5 in the bankruptcy petition of Tacoronte in the secured amount of $3,211,856.21. See Case No. 19-01178, Proof of Claim No. 5.

21. On July 15, 2019, OSP filed a *Transfer of Claim* for such Proof of Claim No. 5 originally filed by Condado 2. See Case No. 19-01178, Docket No. 63.

22. On April 3, 2019, Condado 2 filed Proof of Claim No. 1 in the bankruptcy petition of Remliw in the secured amount of $3,211,856.21. See Case No. 19-01179, Proof of Claim No. 1.

23. On July 15, 2019, OSP filed a *Transfer of Claim* for Claim No. 1 originally filed by Condado in the bankruptcy case of Remliw, Bankr. Case No. 19-01179 Docket No. 60.

24. On August 9, 2019, the bankruptcy estates of Remliw and Monte Idilio were substantially consolidated. See Bankr. Case No. 19-01179, Docket No. 78.

25. On October 8, 2019, the bankruptcy cases of Remliw, Tacoronte, and Hotel Cupido, Inc. ("Hotel Cupido") (collectively with Monte Idilio, the "Debtors") were administratively consolidated. See Bankr. Case No. 19-01178, Docket No. 77.

26. On November 4, 2019, OSP filed Proof of Claim No. 1 in the Hotel Cupido bankruptcy case in the secured amount of $3,261,219.67. See Bankr. Case No. 19-09799, Proof of Claim No. 1.

27. The foregoing Proof of Claims shall be referred to as the "Claim" in this Stipulation.

28. The Debtors and OSP engaged in good faith negotiations regarding OSP's treatment in the Debtors' respective Chapter 11 Plans and hereby submit the terms of their agreement for the Court's approval.

Stipulation

29. Each of the captioned Debtors shall have the following obligations:

<u>Remliw and Monte Idilio:</u>

- Remliw and Monte Idilio shall turnover to OSP its real estate properties that serve as OSP's collateral not sold within one hundred and eighty (180) days from the approval of the foregoing Stipulation through Sections 363, 1123(a)(5), 1123(b)(4), and 1146(a) of the Bankruptcy Code. The properties are those located at Carr 639 k.m 2.1 Sabana Hoyos Ward, Arecibo, PR 00612[1] (as described in *Amended Schedule A*, Case No. 19-01179, Docket No. 39-2, p. 3), ("Remliw's Properties') where Destiny Motel is operated.

- The Remliw's Properties to be transferred are fully encumbered by OSP and there are no further liens, other than the statutory lien in favor of Centro de Recaudación de Ingresos Municipales ("CRIM") for the real property taxes owed for the current fiscal year, plus the real property taxes owed for the past five (5) fiscal years pursuant to Puerto Rico law.

- The value of the transfer to be credited to the stipulated and discounted debt to OSP shall be the net proceeds of the sale and shall be determined by deducting all related expenses such as, and without limitation, property and other taxes, cancellation of liens, etc. The Section 363 sale shall be conducted free and clear of liens and encumbrances.

- In the event that the real properties are not sold to a third party within the next one hundred and eighty (180) days from the approval of the foregoing stipulation, the Remliw's Properties will be transferred to OSP through Sections 363, 1123(a)(5), 1123(b)(4), and 1146(a) of the Bankruptcy Code. To avoid the immediate closing Destiny Motel, Tacoronte

---

[1] These properties are described in the Property Registry in the Spanish language as follows:

(a) RUSTICA: Radicada en el Barrio Sabana Hoyos, sitio denominado Manantial del término municipal de Arecibo, compuesto de 6841.2294 m/c. En lindes por el NORTE, con terrenos de Alfredo Toledo; por el SUR, con terrenos de Monte Idilio, Inc.; por el ESTE, con terrenos de Néstor Martínez; y por el OESTE, con la carretera Estatal #639.

Finca #5118 Inscrita al folio 195 del tomo 353 de Arecibo, Registro de la Propiedad de Arecibo I.

(b) RÚSTICA: Parcela radicada en el Barrio Sabana Hoyos del término municipal de Arecibo, con una cabida superficial de 2.771 cuerdas, equivalentes a 10,911.11 metros cuadrados. En lindes por el NORTE, en 156.77 metros con la finca principal de la cual se segrega, propiedad de los esposos Toledo-Monroig; por el SUR, en 2 alineaciones continuas, una de 63.01 metros y otra de 91.68 metros con terrenos de la Autoridad de Tierras; por el ESTE, en 78.00 metros con terrenos de Néstor Martínez; y por el OESTE, en 70.00 metros con la Carretera Estatal #639.

Finca #20621 Inscrita al folio 208 del tomo 493 de Arecibo, Registro de la Propiedad de Arecibo I.

offers to continue with its administration through a corporate entity of the motel until such a time that the properties are sold. To that extent, Tacoronte's corporate entity will lease from OSP these properties for the continued operation of the business until Destiny Motel is sold. The monthly lease will be in the amount of $1,000 per month. Any revenue beyond that monthly amount will be retained by Tacoronte.

Tacoronte

- Tacoronte shall transfer to OSP through Sections 363, 1123(a)(5), 1123(b)(4), and 1146(a) of the Bankruptcy Code the property located at Bo. Duey in San Germán[2] as described in *Amended Schedule A*, Case No. 19-01178, Docket No. 42, p. 17, and Property F[3], *supra.*
- The property to be transferred is fully encumbered by OSP and there are no further liens; other than the statutory lien in favor of Centro de Recaudación de Ingresos Municipales ("CRIM") for the real property taxes owed for the current fiscal year, plus the real property taxes owed for the past five (5) fiscal years pursuant to PR law.

---

[2] This property is described in the Property Registry in the Spanish language as follows:

RÚSTICA: Parcela de terreno radicada en el Barrio Duey Bajo del municipio de San Germán, con una cabida superficial de 9367.5 metros cuadrados. En lindes por el Norte, en varias alineaciones que suman 162.45 metros, con camino vecinal, por el Sur, en 3 alineaciones que suman 118.40 metros, con César Martínez y Eduardo López, por el Este, en 3 alineaciones que suman 85.20 metros, con la Carretera municipal a Duey Bajo; y por el Oeste, en 70.20 metros, con Sucesió José Dolores Sample.

Finca #8334 Inscrita al folio 64 del tomo 279 de San Germán, Registro de la Propiedad de San Germán.

[3] Property F is described in the Property Registry in the Spanish language as follows:

RUSTICA: Predio de terreno radicado con el #11-A sito en el barrio Hoconuco del término municipal de San Germán. Con una cabida superficial de 1,261.26 metros cuadrados. Colinda al NORTE, en 50.11 metros, con terrenos de Manuel Valentín Padilla, solar # 11 del plano; al SUR, en 3.79 metros y 42.43 metros, con la calle asfaltada; al ESTE, en 25.00 metros, con Alfredo Ortíz y al OESTE, en un ángulo de 5.20 metros, con antiguo remanente de la finca principal, ahora calle asfaltada.

Finca número dieciseis mil trescientos noventa y cinco (16,395), inscrita al folio doscientos veintiseis (226) del tomo quinientos ocho (508) de San Germán.

- The value of the transfer to be included in the § 363 sale shall be determined by deducting all related expenses such as, and without limitation, property and other taxes, cancellation of liens, etc.

30. The Debtors shall make a cash payment to OSP within 12 months of the entry of an Order approving this Stipulation of the remaining balance after applying the foregoing payments for the total settlement payment to be $1,400,000.00 (the "Discounted Pay-off"). Therefore, upon applying all amounts to be paid pursuant to this Stipulation, the Debtors shall pay within 12 months of the entry of the Order approving this Stipulation the amount remaining to pay $1,400,000.00 to OSP as payment in full of the Claim to be applied to principal an interests as provided by the Loan Documents.

31. Additionally, the Debtors shall make monthly payments in the amount of $3,000.00 to be applied to interest on or before the 15th day of each month until payment in full as stated in paragraph 30 above.

32. Remliw and/or Monte Idilio shall assign to OSP all of its rights in the insurance claim made against Integrand Assurance for the damages suffered in Destiny Motel. OSP shall make all reasonable efforts to collect on such claim within the 12-month term provided on paragraph 30 above and any amounts collected shall be applied to the Claim. No amount shall be applied to the $1,400,000.00 payment provided on paragraph 30 unless Integrand Assurance makes the corresponding payment within the 12-month term provided above. If any payment is received after the 12-month term, OSP shall apply the payment to the Claim notwithstanding payment of the $1,400,000.00.

33. Upon payment of the $1,400,000.00, OSP shall release the Debtors and cancel the liens over the Debtors' properties that constitutes OSP's collateral; notwithstanding, in the event the Debtors opt to make a Section 363 sale of any of the real properties with the express consent of OSP, said sale shall be free and clear of liens and encumbrances, liens and encumbrances to attach the proceeds. OSP will be entitled to receive the net proceeds of the sale

after payment of any senior liens, closing costs normally due from seller and any other agreed expense to be paid from the proceeds of the sale, which such net proceeds will be applied to the $1,400,000.00.

34. The Debtors agree to a bar to refile for relief under Title 11 of the U.S. Code for a period of twenty-four (24) months following the approval of this stipulation.

35. The first payment under this Stipulation shall be due on the 15th day of the month following the entry of an Order approving this Stipulation all monthly payments shall be due on the 15th day of each month. Thereafter, once the aforestated § 363 sales order are final, the Debtors shall voluntarily dismiss the instant bankruptcy cases and will not refile for bankruptcy for a year after the order granting the voluntary dismissal. The terms of this Stipulation, including its default remedies, all consequently constitute the above captioned Debtors' payment obligations.

36. The Debtors hereby consent: (i) to the transaction contemplated herein and acknowledge, reaffirm, and ratify all pre-petition security interests granted and liens constituted pursuant to the loan documents executed between the Debtors and OSP and/or any other party to the Loan (the "Loan Documents") as security for the payment and performance of all of the Debtor's obligations and their priority rank, whether or not such documents are described herein; (ii) acknowledge and agree that those guarantees granted by the Debtors (and any and all security and collateral) are, and shall continue to remain, in full force and effect after giving effect to this Stipulation; and (iii) ratify all Loan Documents and the collateral securing such Loan, as well as all documents executed as part of the Loan or the transactions relating thereto.

37. This Stipulation is entered into and shall be binding to OSP, its assigns and its successors in interest and the above captioned Debtors. It shall not constitute and shall not be interpreted as a release to any guarantor and/or third party.

38. Upon the occurrence of any Event of Default, as provided below, all of OSP's Claim, and Debtors' obligations with OSP under the Confirmed Plan, shall revert to their original state under the Loan Documents and any subsequent Judgment issued by the Puerto Rico Court

of First Instance, and the indebtedness shall become immediately due and payable without further notice by OSP. Hence, in the event of any default by the Debtors with any of the agreements reached herein, the Debtors acknowledge, represent, covenant, and agree with OSP that (i) the Debtors' obligation to pay in full the full outstanding balance of the Loans or Judgment and any other sums due to OSP are valid, binding and enforceable in all respects; and (ii) the Debtors' obligations under the Loan, as well as any and all of his other obligations under any agreement or document related to the Loan (including, without limitation, any guarantees granted by the Debtors and this Stipulation) are valid, binding and enforceable in all respects.

39. The following shall constitute separate events of default (each an "Event of Default") and entitle OSP to exercise all of its remedies: (1) any representation, warranty or other written statement made by the Debtors, or by an authorized representative of the Debtors, to OSP with regards to the initiation, negotiation, discussion, and/or execution of this Stipulation proves to have been false or misleading in any material respect when made; or (2) the Debtors' breach of any covenant or obligation contained in the Stipulation herein or failure to comply with or failure to perform any of the terms, conditions or covenants or their obligations set forth in the Stipulation, including, but not limited to, the Debtors' inability to make any of the timely payments identified in the instant Stipulation; or (3) the Debtors shall challenge in any form, way, manner, or action the validity or enforceability of the Loan, the enforceability of the obligations of the Debtors thereunder, or the perfection or priority of any lien granted to OSP by the Debtors, or if the Loan or the transactions relating thereto cease to be in full force or effect; (4) the Debtors 'seeking, or the filing of any motion by any other party to obtain, additional or replacement post-petition financing without the prior written approval of OSP; or (5) the commencement of any challenge by the Debtors against OSP's liens, claims, and/or security interests granted by the Debtors. Any and all of the foregoing Event(s) of Any Default by any of the Debtors shall constitute a breach of this stipulation as a whole and OSP shall at its discretion terminate it, and/or move for any remedy consistent with the execution of OSP's rights and remedies under this Stipulation, Judgment from

any court and/or any applicable law, including, without limitation, seeking or continuing foreclosure procedures. In any event, the Debtors and their principals and/or officers shall not, and shall not cause others, to delay, hinder or intercede in any way with any foreclosure proceeding and/or the execution of any foreclosure judgment.

40. Upon an Event of Default, OSP may issue a notice of default with the Court and/or send a written notice of default to the Debtors' counsels which shall automatically grant OSP relief from the automatic stay. Additionally, OSP reserves the right to seek any remedy available under state or federal law.

41. It is hereby understood and agreed by each of the Parties hereto that this Stipulation is not intended to constitute a modification or extinctive novation ("novación extintiva") of the obligations and undertakings of the Parties under the Loan, except as amended herein. The Debtors ratify, reaffirm, confirm, consent to and acknowledge all of the terms, priority and conditions of, security interest, mortgages or liens granted by the Debtors in the Loan Documents and the Debtors' obligations thereunder.

42. Effective upon the date of the approval of this Stipulation, the Debtors irrevocably and unconditionally release OSP from and against any and all causes of action, suits, debts, liens, obligations, liabilities, claims, demands, damages, judgments, losses, orders, penalties, costs and expenses, of any kind or character, including, but not limited to, attorneys' fees, of any kind or nature whatsoever, known or unknown, direct or indirect, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, arising at law or in equity of whatsoever kind or nature, whether heretofore or hereafter arising, which the Debtors now have, own, hold or claim to have, own or hold, or at any time heretofore have had, owned, held or claimed to have had, owned or held, or hereinafter may have, own or claim to have against OSP, arising from, based upon or related to, whether directly or indirectly: (i) the Loan; (ii) any act, omission, negligence or breach of duty by OSP in connection with the Loan or the transactions relating thereto; (iii) any other act or omission occurring prior to the date of this Stipulation; or (iv) any theory of lender liability or the

like, including allegations of "preferential transfer", "voidable preference" or other "avoidance" action.

43. The foregoing Stipulation is subject to approval of the Bankruptcy Court. In the event the Court does not authorize or approve the terms and conditions herein, in its entirety, the Stipulation shall be null and void and will have no further force and effect and nothing contained herein shall be deemed to be a waiver of the rights of any party.

44. The Debtors agree to maintain adequate insurance over OSP's collateral in its entirety, and to (a) list OSP as an additional insured and loss payee or mortgage payee under the corresponding insurance policies, and (b) upon request, provide to OSP evidence of such insurance (the "Insurance Obligation"). Condado will cover the expense of the insurance over the property located in Arecibo, which shall be deducted from the net proceeds.

45. Failure of OSP to exercise any right provided for herein will not be considered a waiver thereof.

46. Debtors will supply to OSP any documentation OSP requires within 30 days.

47. The Debtors shall not subsequently amend the terms of this Stipulation through a subsequent bankruptcy petition.

<u>Prayer for Relief</u>

WHEREFORE, the Parties respectfully pray the Court to approve this Stipulation and grant any other relief it deems fair and equitable.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 4th day of August, 2021.

<u>Objection Language - PR LBR 9013-1(c)(1)</u>
Within twenty-one (21) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

Certificate of Service

We hereby certify on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

| Attorneys for Debtors: | **Ferraiuoli** LLC |
|---|---|
| /s/Damaris Quiñones-Vargas<br>DAMARIS QUIÑONES VARGAS, Esq.<br>USDC-PR 213709<br>damarisqv@bufetequinones.com<br>Box 429<br>Cabo Rojo, PR 00623<br>Tel. 787-851-7866 Fax 787-851-1717 | Attorneys for OSP<br>PO Box 195168<br>San Juan, PR 00919-5168<br>Tel.: (787) 766-7000<br>Fax: (787) 766-7001<br><br>/s/ Sonia E. Colón<br>SONIA E. COLÓN<br>USDC-PR No. 213809<br>scolon@ferraiuoli.com<br><br>/s/ Gustavo A. Chico-Barris<br>GUSTAVO A. CHICO-BARRIS<br>USDC-PR No. 224205<br>gchico@ferraiuoli.com<br><br>/s/ Camille N. Somoza<br>CAMILLE N. SOMOZA<br>USDC-PR No. 302908<br>csomoza@ferraiuoli.com |
| CARDONA JIMENEZ LAW OFFICES, PSC<br>Attorney for Remliw, Inc.<br>Attorney for Monte Idilio, Inc.<br>PO Box 9023593<br>San Juan, PR 00902-3593<br>Tel. 787-724-1303<br>Fax. 787-724-1369<br>E-mail: jf@cardonalaw.com<br><br>By: s/José F. Cardona Jiménez.<br>USDC PR 124504 | |