## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br>WILMER TACORONTE ORTIZ<br>Debtor | CASE NO. 19-01178 (EAG) |
| IN RE:<br>REMLIW, INC.<br>Debtor | CASE NO. 19-01179 (EAG) |
| IN RE:<br>MONTE IDILIO INC.<br>Debtor | CASE NO. 19- 03828 (EAG) |
| IN RE:<br>HOTEL CUPIDO INC.<br>Debtor | CASE NO. 19-03799 (EAG) |

## JOINT PLAN OF LIQUIDATION

Filed by: ALL DEBTORS

Date: October 15, 2021

### DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings specified

below and such meanings shall be equally applicable to the singular and plural forms of the

terms defined, unless the context requires otherwise:

1.     "ADMINISTRATIVE CLAIM": any costs or expenses of administration of the

Chapter 11 case entitled to priority in accordance with the provisions of Sections 503(b) and

507(a)(1) of the Bankruptcy Code, including any actual and necessary expenses incurred in

preserving Debtor's estate, operating Debtor's business and to satisfy post Confirmation Date

expenses. Fees and expenses incurred by attorneys and other professionals retained by Debtor in

1

connection with the preparation, approval, confirmation and consummation of Debtor's Disclosure Statement and Plan shall constitute Administrative Claims.

2. "AFFILIATE": an Affiliate of any Person that is an "affiliate", as defined in the Bankruptcy Code, as if such Person were a Debtor under the Bankruptcy Code.

3. "ALLOWED ADMINISTRATIVE CLAIM": any existing or future Administrative Claim either (i) for which a fee application has been filed on or before the date, if any, designated as the last date for filing such fee application and which has been allowed by a Final Order, or (ii) as to any other Administrative Claim, (a) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing the proof of claim with respect thereto, pursuant to the provisions of this Plan or pursuant to any other order, and (b) as to which either no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), or the Bankruptcy Court, or as to which any timely objection has been determined and all or some portion has been allowed by a Final Order.

4. "ALLOWED CLAIM": any claim, other than an Administrative Claim (1) in respect to which a proof of claim has been filed within the time fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(2), or (2) scheduled in the schedule of liabilities filed pursuant to Section 521(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b) and not therein listed as disputed, contingent or unliquidated, and in either case if no objection to the allowance thereof has been filed except to the extent that any such objection has been determined by a final and

unappealable order or judgment or by stipulation approved by a final and unappealable order or judgment.

5. "ALLOWED INTEREST": any interest (1) in respect to which a proof of interest has been filed within the time fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), or (2) scheduled in the list of equity security holders filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(a)(3), and in either case if no objection to the allowance thereof has been filed except to the extent that any such objection has been determined by a final and unappealable order or judgment or by stipulation approved by a final and unappealable order or judgment.

6. "ASSETS": all property of the Debtor on the Effective Date, including, without limitation, all Intangible and Tangible Assets.

7. "BALLOT DATE": the date set by the Bankruptcy Court as the last date for the timely submission of a ballot accepting or rejecting the Plan.

8. "BANKRUPTCY CODE": the Bankruptcy Reform Act of 1978, as amended and as applicable to the Chapter 11 Case, set forth in Section 101 et seq. of Title 11, United States Code.

9. "BANKRUPTCY COURT": the United States Bankruptcy Court for the District of Puerto Rico, acting in this case, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

10. "BANKRUPTCY RULES": the Federal Rules of Bankruptcy Procedure, as amended and supplemented by any local bankruptcy rule.

11. "CASH": currency or check drawn by the Debtor against any bank account under its control.

12. "CHAPTER 11": Chapter 11 of the Bankruptcy Code.

13. "CHAPTER 11 CASE": the Chapter 11 case commenced by the Debtor on the Petition Date:

| Debtor | Filing Date |
|--------|-------------|
| Wilmer Tacoronte Ortiz | March 2, 2019 |
| REMLIW, Inc. | March 2, 2019 |
| Hotel Cupido, Inc. | June 30, 2019 |
| Monte Idilio, Inc. | July 1, 2019 |

14. "CLAIM": any (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

15. "CLASS": any class into which allowed claims or allowed interests are classified pursuant to Article I hereof.

16. "CLOSING DATE" shall be thirty days from the date that the order the sale plan becomes final.

17. "COLLATERAL": property in which the Debtor has an interest that secures, in whole or in part, the payment of a Claim (except pursuant to any lien granted under the Plan).

18. "CONFIRMATION DATE": the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code; provided, however, that if on motion the Confirmation Order or consummation of this Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

19. "CONFIRMATION OF THE PLAN": the entry by the Court of an order confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

20. "CONFIRMATION ORDER": the order of the Bankruptcy Court confirming this Plan and approving the transactions contemplated herein.

21. "CONSUMMATION OF THE PLAN": the accomplishment of all things contained or provided for in this Plan, and the entry of a final decree in this case.

22. "CONTESTED CLAIM": any Claim as to which the Debtor has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, this Plan, or orders of the Bankruptcy Court, which objection has not been withdrawn or determined by a Final Order.

23. "CORPORATION": shall include an association having a power or privilege that a private corporation organized under a law that makes only the capital subscribed responsible for the debts of such association; joint-stock company; unincorporated company or association; or business trust; and includes special partnership.

24. "CRAM-DOWN": Section 1129(b) of the Bankruptcy Code permits the Court to confirm a plan notwithstanding failure of an impaired class to accept the plan. This subsection

contains the so-called cram-down. It requires simply that the plan meet certain standards of fairness to dissenting creditors or equity security holders. The general principle of the subsection permits confirmation notwithstanding nonacceptance by an impaired class if that class and all below it in priority are treated according to the absolute priority rule. The dissenting class must be paid in full before any junior class may share under the plan. If it is paid in full, then junior classes may share. Treatment of classes of secured creditors is slightly different because they do not fall in the priority ladder, but the principle is the same. Specifically, the Court may confirm a plan over the objection of a class of secured claims if the members of that class are unimpaired or if they are to receive under the plan property of a value equal to the allowed amount of their secured claims, as determined under 11 U.S.C. 506(a). The property is to be valued as of the Effective Date of the Plan, thus recognizing the time-value of money. As used throughout this subsection, "property" includes both tangible and intangible property, such as a security of the Debtor or a successor to the Debtor under a plan. The Court may confirm a plan over the dissent of a class of unsecured claims, including priority claims, only if the members of the class are unimpaired, if they will receive under the plan property of a value equal to the allowed amount of their unsecured claims, or if no class junior will share under the Plan. That is, if the class is impaired, then they must be paid in full or, if paid less than in full, then no class junior may receive anything under the plan.

25. "CREDITOR": any Person that is the holder of a Claim.

26. "DEBTOR":

<u>Debtor</u>                    <u>Case No.</u>

| Wilmer Tacoronte Ortiz | 19-01178 EAG-11 |
| REMLIW, Inc., | 19-01179 EAG-11 |
| Hotel Cupido, Inc. | 19-03799 EAG-11 |
| Monte Idilio, Inc. | 19-03828 EAG-11 |

27. "DEBTOR'S AFFILIATE CLAIM":   any claim of an Affiliate of Debtor arising or deemed to have arisen on or before the Consummation Date.

28. "DEBTOR-IN-POSSESSION":  the Debtor as Debtor-in-possession in the Chapter 11 Case.

29. "DEFICIENCY CLAIM":  a Claim of a Creditor equal to the amount by which the aggregate Claims of such Creditor against the Debtor exceed the sum of (a) any setoff rights of the Creditor against the Debtor plus (b) the Net Proceeds realized from the disposition of the Collateral securing such Claim or, if such Collateral is not liquidated to cash, the value of the interest of the Creditor in the Debtor' interest in the Collateral securing such Claim, provided, however, that if the holder of such Claim makes the election provided in Section 1111(b) of the Bankruptcy Code, there shall be no Deficiency Claim in respect to such Claim.

30. "DISALLOWED CLAIM":  a Claim to the extent that such Claim was disallowed by a Final Order or by written agreement of the holder thereof.

31. "DISCLOSURE STATEMENT":  the Disclosure Statement in respect to this Plan approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

32. "EFFECTIVE DATE":  shall be thirty days from the date that the order confirming the plan becomes final.

33. "EQUITY SECURITY HOLDERS":   holders of an equity security of the Debtor including common shares.

34.    "FINAL DISTRIBUTION: the final distribution under this Plan.

35.    "FINAL ORDER":  an order or a judgment which has not been reversed, stayed, modified or amended and (a) as to which (i) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (ii) if an appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and (b) as a result of which such order shall have become final and unappealable in accordance with applicable law.

36.    "GOVERNMENTAL UNIT":  the United States, State, Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality thereof (but not a United States trustee while serving as a trustee in a case under the Code), or other foreign or domestic government.

37.    "INTANGIBLE ASSETS":  all general intangibles, rights, claims, contract rights, franchise rights, and causes of action, whether equitable or legal, of the Debtor and the Debtor-in-Possession (including the right to prosecute or compromise and settle such rights, claims, and causes of action in the name of such Persons or office).

38.    "INTEREST":  the interests in Debtor of holders of common shares.

39.    "MUNICIPALITY":  political subdivision or public agency or instrumentality of a state.

40.    "NET PROCEEDS":  all proceeds realized from the sale or other disposition of Assets, after deduction of all reasonable costs and expenses to the extent actually incurred and

paid in connection with the preservation and sale or other disposition of the Assets and, to the extent applicable, after the payment of any Secured Claim on such Asset.

41.  "PERSON":  an individual, partnership and corporation, but does not include governmental unit, provided, however, that any governmental unit that acquires an asset from a person as a result of operation of a loan guarantee agreement, or as a receiver or liquidating agent of a person, will be considered a person for purposes of Section 1102 of the Code.

42.  "PETITION DATE":  August 28, 2003, the date on which the Debtor filed its Chapter 11 petition with the Bankruptcy Court.

43.  "PLAN":  this Plan in its present form or as it may be amended or supplemented from time to time.

44.  "PRIORITY CLAIM":  any Claim, to the extent entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

45.  "PROFESSIONAL PERSONS":  Persons retained or to be compensated pursuant to Sections 326, 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code.

46.  "PRO RATA":  the proportion that the amount of a Claim against the Debtor in a particular Class bears to the aggregate amount of all Claims, including objected or disputed claims until disallowed, in such Class.

47.  "PURCHASER":  shall mean transferee of a voluntary transfer and includes immediate or mediate transferee of such a transferee.

48. "REORGANIZED DEBTORS": Wilmer Tacoronte Ortiz, REMLIW, Inc., Hotel Cupido, Inc. and Monte Idilio, Inc. will be the Reorganized Debtors pursuant to the provisions hereof, including the provisions of Articles IV and V.

49. "SECURED CLAIM": a Claim of a Creditor arising on or before the Petition Date that is secured by a lien on Collateral or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in the Debtor' interest in the property, or to the extent of the amount of the setoff, as applicable; provided, however, that if the Creditor makes the election provided in Section 1111(b) of the Bankruptcy Code, the Creditor's Claim shall be a Secured Claim in the full amount of the Creditor's Allowed Claim.

50. "SECURED CREDITOR": any Creditor that is the holder of a Secured Claim.

51. "SUBSTANTIAL CONSUMMATION": means:

 (A) transfer of all or substantially all of the property proposed by the Plan to be transferred;

 (B) assumption by the Debtor, the Reorganized Debtor under the Plan of the business or of the management of all or substantially all of the property dealt with by the Plan; and

 (C) commencement of distribution under the Plan.

52. "TANGIBLE ASSETS": all personal and real property of the Debtor, and proceeds thereof (including cash proceeds), existing immediately before the Consummation Date.

53. "TAX CLAIM": any Claim that is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

54. "TRANSFER": every mode, direct or indirect, absolute or conditional, voluntary, or involuntary, or disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the Debtor's equity.

55. "UNSECURED CLAIM": an Unsecured Claim, including any Deficiency Claim, that is not; (i) entitled to priority pursuant to the Bankruptcy Code; or (ii) subordinated for purposes of distribution to any unsecured Claim pursuant to Subsection 510(b) or 510(c) of the Bankruptcy Code.

56. "UNSECURED CREDITOR": any Creditor that is the holder of an Unsecured Claim.

## ARTICLE I

## CLASSIFICATION OF CLAIMS

1.1     Class I - Costs and expenses of administration as defined in Section 507 (a)(3) Bankruptcy Code as the same are allowed, approved, and ordered paid by the Court. Debtors estimate that at the time of the confirmation of the Plan, Class I administrative claims will amount to approximately to:

| Debtor | Cost and Expense of Administration |
|---|---|
| Wilmer Tacoronte Ortiz | $25,000.00 in attorney's fees |
|  | 5,000.00 in accountant's fees |
| REMLIW, Inc. | 10,000.00 in attorney's fees |
| Hotel Cupido, Inc. | 18,000.00 in attorney's fees |
|  | 5,000.00 in accountant's fees |
| Monte Idilio, Inc. | 0.00 |
| Total | $63,000.00 |

1.2     Class II – Tax Claims entitled to priority by Section 507(a) (8) of the Bankruptcy Code, as the same are allowed, approved, and ordered paid by the Court. Debtors does not have any pending claims under 11 U.S.C. §507(a) (1) (2), (4), (5), (6), (7) and (8). REMLIW, Inc. estimates that at the time of the confirmation of the Plan, Class II claims entitled to priority by Section 507(a) (8), will amount to $1,022.98.[1]; Wilmer Tacoronte Ortiz $5,000.00 (Claim #7) ; Hotel Cupido Inc. there is no claim. Debtors does not have any pending claims under 11 U.S.C. §507(a) (2), (4), (5), (6), (7), (9) and (10).

1.3     Class III – The secured claim of the Municipal Revenue Collection Center ("CRIM") based on the statutory lien created by Act 83 of 1991, Article 3.30 for real property taxes including the current year and the antecedent five years claimed[2] in the aggregate amount of $81,989.80 for REMLIW, Inc. and 83,06950 for Wilmer Tacoronte Ortiz (Claim 4 CRIM); For Hotel Cupido Inc there is no CRIM secured debt.

1.4     Class IV – The secured claim of OSP Consortium, LLC ("OSP") - secured by several mortgages, junior in rank to CRIM's secured claim and that encumber the real properties of the estates of REMLIW, Inc. / Monte Idilio, Inc., and Wilmer Tacoronte Ortiz, including a lien over the personal property of the aforementioned Debtors, as well. Based on the bifurcation of the claim taking into consideration the value of the assets of the estate, senior liens, and encumbrances, OSP's secured claim after stipulation is in the amount of $1,400,000.00.

---

[1] See claim number 3 filed by the Department of Treasury.
[2] See claim number 2.

1.5    Class IV-A – The secured claim of Toyota Motor Credit – secured by a lien registered pursuant to the Commercial Transaction Act of Puerto Rico that encumbers a motor vehicle Toyota Highlander 2016 registered in the name of Wilmer Tacoronte Ortiz.

1.6    Class V – Unsecured creditors for Debtors with claims totaling approximately the amount of:

| Debtor | Total Unsecured Claims |
| --- | --- |
| Wilmer Tacoronte Ortiz | $192,798.97 |
| REMLIW, Inc., | 54,983.22 |
| Hotel Cupido, Inc. | 0.00 |
| Monte Idilio, Inc. | 1,313.08 |
| Total | $249,095.27 |

1.7    Class VI – Interest of the shareholders of REMLIW, Inc., Monte Idilio, Inc., and Hotel Cupido, Inc. with claim estimated in the amount of $1.00 to the extent that such claims are approved and allowed by the Court or deemed allowed under the provisions of the Bankruptcy Code.

## ARTICLE II

## CLAIMS NOT IMPAIRED UNDER THE PLAN

Class I claim shall be paid in cash and in full on the Effective Date or the Closing Date as soon as feasible after the date any such claim becomes an allowed Administrative Claim, or as otherwise due in the normal course of Debtor's current activities.

Class IV-A – Toyota Motor Credit shall retain its lien until such a date the secured debt is paid in full. This installments in this secured debt are current and Wilmer Tacoronte Ortiz shall

continue making direct post-petition mortgage payments according to the contractual terms of the security agreement.

# ARTICLE III

## TREATMENT OF CLASSES THAT ARE IMPAIRED UNDER THE PLAN

3.1     Class II - Proposed Treatment:  Will receive on the Effective Date or the Closing Date a pro-rata dividend from the available funds to be obtained from the sale of the assets after payment of Class I

3.2     Class III – Proposed Treatment: The secured claim of CRIM, unless said creditor agrees to a different treatment will be paid in the following manner:  after the sale of the asset in which said secured creditor has a validly perfected statutory lien, said creditor will receive on the Effective Date or the Closing Date, whichever is later, a payment in full of its secured claim from the net proceeds of the sale, excluding expenses and attorney's fee.  The balance will be deemed as an unsecured claim, which will receive a pro-rata dividend from the available funds to be obtained from the sale of the assets after payment of Class I. CRIM shall retain its statutory lien until such a date that the collateral is sold free and clear of liens and encumbrances, liens, and encumbrances, if any to attach the proceeds.

3.3     Class IV – Proposed Treatment: The secured claim of OSP, unless said creditor agrees to a different treatment will be paid as Stipulated in Dockets 155 for Wilmer Tacoronte, 171 for REMLIW; 116 for Hotel Cupido.

Class V - Proposed Treatment: general unsecured claims will be paid on the Effective Date effective date or the Closing Date on a pro-rata basis from the available funds on that date after payment of Classes I, II, III and IV.

3.4     Class VI – Proposed Treatment: Equity security holder interest will be cancelled on the Effective Date and shall receive no dividend under the Plan nor any type of compensation or fringe benefits.

THE FOREGOING IS A PRESENTATION OF THE CLASSIFICATION OF CLAIMS UNDER THE PLAN AND ITS TREATMENT. CREDITORS ARE URGED TO READ THE PLAN IN FULL. THEY ARE FURTHER URGED TO CONSULT WITH COUNSEL OR WITH EACH OTHER IN ORDER TO FULLY UNDERSTAND THE PLAN. THE PLAN IS COMPLEX INASMUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE COMMITTEE AND AN INTELLIGENT JUDGMENT CONCERNING SUCH PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.

## ARTICLE IV

## MEANS FOR EXECUTION OF THE PLAN

The funds for the payment to Debtor's creditors will originate from Debtors' available funds and the sale of its remaining assets.

4.1     On the Effective Date of the Plan, the distribution, administration and management of the Debtors' affairs, collection of moneys and distribution to creditors, unless otherwise provided herein, will be under the control and supervision of the current officers, who will assume the same roles as they have assumed throughout the reorganization process. Mr. Wilmer Tacoronte Negrón shall continue as the administrator and chief financial officer of the reorganized Debtors. Mr. Tacoronte Negrón receives no compensation and shall not receive compensation for the services rendered to the reorganized Debtors.

4.2    Debtors shall conduct an orderly sale of the assets of their respective estates with the authorization of the Court.

## ARTICLE V

## PROVISIONS FOR  EXECUTORY CONTRACTS

The non-residential lease agreements executed by the Debtors will be assumed. All executory contracts not previously assumed and/or assigned shall be deemed rejected upon confirmation of the Plan.

## ARTICLE VI

## PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR

According to the provisions of Section 1123(b) (3) of the Bankruptcy Code, Debtor will retain and enforce or settle and adjust any claim belonging to the Debtor or to its estate.

## ARTICLE VII

## DISCHARGE OF CLAIMS

Except as otherwise expressly provided in Section 1141 of the Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement, release and discharge, as against the assets of Debtor, of any debt of the Debtor that arose before the Effective Date, and any debt of the Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Code, and all claims against the assets of Debtor of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt, obligation or equity interest is filed or deemed filed under Section 501 of the Code, (ii) such claim is allowed

under Section 502 of the Code, or (iii) the holder of such claim has accepted the Plan. Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

## ARTICLE VIII

## VOTING ON THE PLAN AND COMPLIANCE WITH 11 U.S.C. §1129

8.1     Unimpaired Classes or Claims Not Receiving Dividends. Claims in Classes I, and II are deemed unimpaired by this Plan in accordance with Section 1124 of the Bankruptcy Code. Class VI, whose shares, or interests are to be cancelled as well as Classes I and II, are deemed to have accepted the Plan in accordance with Section 1126 (f) and (g) of the Bankruptcy Code or are not otherwise required to have their votes to accept or reject the Plan solicited. Accordingly, Debtor is not required to solicit the votes of such classes with respect to the acceptance or rejection of the Plan. Class III, IV and V are impaired and are entitled to vote for the acceptance or the rejection of the Plan.

8.2     Reservation of Section 1129(b) Rights. In the event that an impaired class will have failed to accept the Plan by the requisite majorities in accordance with Section 1126 (c) and (d) of the Bankruptcy Code, Debtor hereby reserves its rights and intends to request that the Bankruptcy Court confirms the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

8.3     Section 1129(a) (12) Compliance. All fees payable under 28 U.S.C. §1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, either will have been paid or will be paid on the Consummation Date as an Administrative Claim.

8.4 Deemed Satisfaction of Section 1129(a) (13) of the Bankruptcy Code. Prior to the commencement of the Chapter 11 case, the Debtor did not have a plan providing for retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code. Consequently, the confirmation requirements contained in Section 1129(a) (13) of the Bankruptcy Code are inapplicable to the Plan, and the Plan shall be deemed to have satisfied such requirements.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMMATION

That it be determined by the Court after hearing on notice that:

1. The Plan has been accepted in writing by the creditors and equity security holders whose acceptance is required by law;

2. The provisions of Chapter 11 of the Code have been complied with and that the Plan has been proposed in good faith and not by any means forbidden by law;

3. Each holder of a claim or interest required to vote on the Plan has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less that the amount such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Code on such date. The Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under the Plan, and has not accepted the Plan;

4. All payments made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan or by any other person for services or for costs and expenses in, or in connection with, the Plan and incident to the case, have been fully disclosed to the Court

and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court;

5. The identity, qualifications, and affiliations of the persons who are to be directors or officers of the Debtor after confirmation of the Plan, have been fully disclosed, and the appointment of such persons to such offices, or their continuance therein is equitable and consistent with the interests of the creditors and equity security holders and with public policy;

6. The identity of any insider that will be employed or retained by the Debtor and his compensation have been fully disclosed.

## ARTICLE X

## CONDITIONS PRECEDENT TO CONSUMMATION

Conditions Precedent. The following shall be conditions precedent to the consummation of the Plan:

(a) The confirmation Order be final;

(b) The transactions and dividends or payments set forth in Articles II and III of the Plan have been paid.

## ARTICLE XI

## AMENDMENT AND INTERPRETATION OF THE PLAN

11.1 Scope of Jurisdiction. The Bankruptcy Court shall retain jurisdiction over the Chapter 11 case for the following purposes:

(a) to determine any and all objections to the allowance of claims including administrative claims;

(b) to determine any and all fee applications and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(c) to determine any and all pending applications or motions for the rejection or assumption of executory contracts or for the rejection or assumption and assignment, as the case may be, of leases to which Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need to liquidate, any and all claims arising therefrom;

(d) to determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date;

(e) to modify the Plan or remedy any defect or omission or reconcile any inconsistency in any of its orders, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

(f) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan;

(g) to enter such orders as may be necessary to consummate, implement and effectuate the operative provisions of the Plan and execute all documents and agreements provided for herein or entered into pursuant hereto, including, without limitation, to issue pertinent orders to protect the Debtor from creditor's actions; and

(h) to enter a final decree closing the Chapter 11 case.

11.2    Failure Of The Bankruptcy Court To Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 case, including the matters set forth

above, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII

## AMENDMENT AND INTERPRETATION OF THE PLAN

12.1     Amendment.   This Plan may be altered, amended, or modified by the Debtor before or after the Confirmation Date, in the manner provided for by Section 1127 of the Bankruptcy Code.   A holder of a claim or equity interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

12.2     Headings.   The headings used in the Plan are inserted for convenience of reference only and neither constitutes part of the Plan nor in any manner affect the provisions or interpretation thereof.

12.3     Severability.  Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision(s) of the Plan.

12.4 Successors And Assigns.   The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person.

12.5 Internal References. The words "herein", "hereof", "hereto", "hereunder", and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.

## ARTICLE XIII

## MISCELLANEOUS

Debtor shall have until thirty (30) days after the entry of the Confirmation Order to file objections to claims. Any claims not objected to prior to the expiration of said period will be considered allowed, unless otherwise dealt with in this Plan.

Within one year after the Effective Date, the Committee will proceed with Debtor's dissolution with the Department of State of Puerto Rico.

In San Juan, Puerto Rico this _15_ day of October 2021.

WILMER TACORONTE ORTIZ by Power of Attorney and Guardian ad Litem
REMLIW, INC.
HOTEL CUPIDO INC.
MONTE IDILIO, INC.

By: _Wilmer Tacoronte Negron_
    WILMER TACORONTE NEGRON
    Administrator
    Guardian ad Litem

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on even date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Camille Somoza, Esq., Gustavo Chico Baris, Esq., Sonia Colón Colón, Esq. Carmen Priscilla Figueroa, Esq., and the United States Trustee**, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: Department of Treasury.

*s/José F. Cardona Jiménez*
USDC PR 124504
Attorney for Debtor
CARDONA JIMENEZ LAW OFFICES, PSC
PO Box 9023593
San Juan, PR 00902-3593
Tel. 787-724-1303
Fax. 787-724-1369
E-mail: jf@cardonalaw.com

/s/Damaris Quiñones-Vargas
DAMARIS QUIÑONES VARGAS, Esq.
USDC-PR 213709
Box 429
Cabo Rojo, PR 00623
Tel. 787-851-7866
Fax 787-851-1717
damarisqv@bufetequinones.com